IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Tammy Raul, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>   v.<br><br>DOVER DOWNS GAMING & ENTERTAINMENT, INC., HENRY B. TIPPIE, DENIS MCGLYNN, TIMOTHY R. HORNE, R. RANDALL ROLLINS, PATRICK J. BAGLEY, and JEFFREY W. ROLLINS,<br><br>                Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tammy Raul ("Plaintiff") by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Dover Downs Gaming & Entertainment, Inc. ("Dover Downs" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Dover Downs and the Defendants.

**SUMMARY OF THE ACTION**

1.     Plaintiff brings this class action on behalf of the public shareholders of Dover Downs against the Company's Board of Directors (the "Board" or the "Individual Defendants")

for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company in a stock-for-stock transaction with Twin River Worldwide Holdings, Inc. ("Twin River" or "Parent") (the "Proposed Transaction").

2.        On July 22, 2018, Dover Downs entered into a Transaction Agreement (the "Agreement") with Twin River and Double Acquisition Corp., an indirect wholly owned subsidiary of Parent ("Merger Sub"), pursuant to which, among other things and subject to the conditions set forth therein, Merger Sub will merge with and into the Company (the "Merger"), with the Company continuing as the surviving corporation and a wholly owned subsidiary of Parent.

3.        Pursuant to the terms of the Agreement, each share of the Company's common stock, par value $0.10 per share, and Class A common stock, par value $0.10 per share (together, the "Company Common Stock"), issued and outstanding immediately prior to the effective time will be cancelled and converted into the right to receive a number of shares of validly issued, fully paid and non-assessable shares of common stock of Parent (the "Parent Common Stock"), equal to the quotient obtained by dividing (A) the aggregate number of shares of Parent Common Stock issued and outstanding immediately prior to the effective time, on a fully diluted, as-converted basis, multiplied by 0.07787658, by (B) the aggregate number of shares of Company Common Stock issued and outstanding immediately prior to the effective time, on a fully diluted, as-converted basis, plus cash in lieu of any fractional shares (the "Merger Consideration"). The aggregate number of shares of Parent Common Stock issued as Merger Consideration in the transaction is intended to represent 7.225% of the outstanding equity of Parent immediately after giving effect to the Merger.

4. The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of Dover Downs. The Company expects the Proposed Transaction to close in the second half of 2019.

5. On November 5, 2018, in order to convince Dover Downs' stockholders to vote in favor of the Proposed Transaction, the Board, jointly with Twin River, authorized the filing of a materially incomplete and misleading preliminary proxy statement with the SEC (the "Proxy Statement") by Granite, in violation of Sections 14(a) and 20(a) of the Exchange Act.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Dover Downs and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Dover Downs stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.   Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Additionally, the Company's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

10.   Plaintiff is, and has been at all times relevant hereto, the owner of Dover Downs common stock.

11.   Defendant Dover Downs is a Delaware corporation with its principal executive offices located at 1131 N. DuPont Highway, Dover, Delaware 19901. The Company's common stock is traded on the NYSE under the symbol "DDE."

12.   Defendant Henry B. Tippie ("Tippie") is and has been the Chairman of the Company's Board at all times during the relevant time period.

13.   Defendant Denis McGlynn ("McGlynn") is and has been the Company's Chief Executive Officer ("CEO") and a director of the Company at all times during the relevant time period.

14.   Defendant Timothy R. Horne ("Horne") is and has been the Company's Chief Financial Officer ("CFO") and a director of the Company at all times during the relevant time period.

15.   Defendant R. Randall Rollins ("R. Rollins") is and has been a director of the Company at all times during the relevant time period.

16.   Defendant Patrick J. Bagley ("Bagley") is and has been a director of the Company at all times during the relevant time period.

17.   Defendant Jeffrey W. Rollins ("J. Rollins") is and has been a director of the Company at all times during the relevant time period.

18. Defendants Tippie, McGlynn, Horne, R. Rollins, Bagley, and J. Rollins are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, along with Defendant Dover Downs, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Dover Downs (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

21. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of October 31, 2018, there were 18,413,587 common shares and 14,869,623 Class A Common shares of Dover Downs outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

  d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

  e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

  f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

22. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23. Dover Downs is a diversified gaming and entertainment company whose operations consist of the Dover Downs Hotel & Casino and Dover Downs Raceway. Dover Downs Hotel & Casino is comprised of a 165,000 square-foot video lottery (slots) casino complex and an adjoining hotel featuring luxury accommodations with conference, banquet, fine dining, ballroom and concert hall facilities. Dover Downs Raceway is a harness racing track with pari-mutuel wagering on live and simulcast horse races.

### The Company Announces the Proposed Transaction

24. On July 23, 2018, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

> DOVER, Del. & LINCOLN, R.I.--(BUSINESS WIRE)--Dover Downs Gaming & Entertainment, Inc. (NYSE: DDE) and Twin River Worldwide Holdings, Inc. announced today that they have entered into a definitive merger agreement. The proposed transaction will transform Twin River into a publicly traded company

6

with strategically placed gaming and entertainment holdings throughout the United States.

The merger contemplates that Dover Downs stockholders will exchange their Dover Downs stock for Twin River common shares representing 7.225% of the equity in the combined company at closing. Common Stock and Class A Common Stock of Dover Downs will be treated equally in the merger. The transaction is intended to qualify as a tax-free reorganization (except for cash paid in lieu of fractional shares).

Twin River is privately held and there is currently no public market for its shares. As a condition to closing, Twin River will register its shares with the Securities and Exchange Commission (the "SEC") and list the shares on the NYSE or NASDAQ.

*   *   *

The number of Twin River shares to be issued will be calculated based on each company's fully diluted share count at closing. Based on each company's share count as of the date hereof, each share of Dover Downs stock would be exchanged for 0.0225 shares of Twin River stock. Twin River contemplates effecting a stock split prior to closing intended to bring its stock price to a marketable trading range, which would result in a corresponding adjustment to the exchange ratio. Twin River also currently intends to initiate a tender offer or other form of return of capital transaction after the closing. The amount and terms will be determined at that time and be based upon prevailing market conditions, Twin River's financial condition and prospects and other factors.

Dover Downs' President and CEO, Denis McGlynn stated, "Becoming part of Twin River is transformational for us. We have been impressed with the depth and talent of the Twin River organization and their operational capabilities. We believe this transaction will help us grow our business, invest in our people and our facilities and compete more effectively given changes in gaming on the horizon. We expect to see many positive benefits for the State, the Delaware Lottery and our employees and stockholders."

Jeffrey W. Rollins, a director and member of the Audit Committee of Dover Downs is expected to join the Twin River Board of Directors post-closing, pending regulatory approval.

A committee of the Board of Directors of Dover Downs comprised of non-executive, independent directors unanimously determined that the transaction is fair to, and in the best interests of, Dover Downs and its stockholders. The Dover Downs Board of Directors has also unanimously approved the transaction, and has recommended that Dover Downs' stockholders approve the merger. Houlihan Lokey Capital, Inc. provided a fairness opinion to the Dover Downs Board of

Directors in connection with the transaction. All directors and executive officers of Dover Downs executed a Voting Agreement by which they agree to vote in favor of the merger, subject to the terms and conditions set forth in the agreement. The approval of a majority of Dover Downs' unaffiliated stockholders is a condition to closing.

Twin River Executive Chairman John E. Taylor, Jr. said, "We're excited about the many benefits we believe we will realize from the combination. Dover Downs and its team are experienced in not only brick and mortar casino operations, but in sports betting, which we think will be helpful as we introduce that amenity at our properties, and in the online gaming sector which continues to evolve nationwide. Equally important, we see real opportunities to grow the Dover Downs business through investment in its people and facilities, similar to what we have achieved with our other assets over the past several years."

Taylor continued, "We've been focused on growing the overall business for some time now as a means to create greater shareholder value, expand our geographic footprint to achieve financial economies and strengthen our financial position. This merger should well position us to achieve all three objectives in a context in which existing shareholders of Twin River who desire it could obtain liquidity."

He concluded, "We're grateful for the strong partnership we enjoy with the State of Rhode Island at our flagship property, and we look forward to working equally effectively with the State of Delaware in maximizing the potential of Dover Downs."

The merger would provide a physical presence for Twin River in the Mid-Atlantic region, a new geographic market. Twin River already operates assets in the South (Biloxi, Mississippi), West (Aurora, Colorado) and Northeast (Lincoln and Tiverton, Rhode Island (opening shortly)) regions.

The consummation of the merger is also subject to regulatory approvals and other customary closing conditions.

Dover Downs was advised by Citizens Capital Markets as financial advisor and Drinker Biddle & Reath LLP as legal counsel. Twin River's financial advisors were Moelis & Company LLC and Stifel and its counsel was Jones Day.

**Compensation to the Company's
Officers and Directors Resulting From the Proposed Transaction**

25.     Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Transaction. Restricted Stock Units that have been awarded to the Company's officers and directors will vest and will be converted to the right to receive

Merger Consideration. The following charts, taken from the Proxy Statement, show the potential payouts to Dover Downs' officers and/or directors as a result of the Proposed Transaction:

| Name | Cash ($)(1) | Equity ($)(1)(2) | Pension/ NQDC ($)(1) | Perquisites/ benefits ($)(1)(3) | Tax reimbursement ($)(1)(3) | Other ($) | Total ($)(3) |
|---|---|---|---|---|---|---|---|
| Denis McGlynn, President and Chief Executive Officer | 2,168,750 | 184,680 | 393,619 | | | — | |
| Timothy R. Horne, Sr. Vice President-Finance, Treasurer, and Chief Financial Officer | 720,000 | 147,744 | 90,818 | | | — | |
| Edward J. Sutor, Executive Vice President and Chief Operating Officer | 860,000 | 184,680 | 175,672 | | | — | |
| Klaus M. Belohoubek, Sr. Vice President, General Counsel and Secretary | 620,000 | 147,744 | 103,276 | | | — | |

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

26.  On November 5, 2018, the Company filed the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

27.  Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Twin River & Dover Downs Projections

28.  The Proxy Statement contains the unaudited projections of Twin River and Dover Downs' management concerning the Proposed Transaction, but fails to provide material information concerning such.

29. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

30. In order to make the Twin River and Dover Downs Projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

31. With respect to the Twin River Projections, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including (i) net revenues; and (ii) Adjusted EBITDA.

32. With respect to the Dover Downs Projections, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including (i) Net Revenues; (ii) Adjusted EBITDA; and (iii) Adjusted EBIT.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

33. Failure to provide complete and full disclosure of the line item projections for the metrics used to calculate the above-mentioned non-GAAP metrics leave Dover Downs shareholders without the necessary, material information to reach a fully-informed decision concerning the Company, fairness of the Merger Consideration, and whether to vote in favor of the Proposed Transaction.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Houlihan Lokey's Opinion**

34. The Proxy Statement contains the financial analyses and opinion of Houlihan Lokey Capital, Inc. ("Houlihan Lokey") concerning the Proposed Transaction, but fails to provide material information concerning such.

35. With respect to Houlihan Lokey's *Selected Companies Analysis*, the Proxy Statement fails to disclose the basis for applying the following multiple ranges to Dover Downs in its analysis: (i) a range of 6.5x to 7.5x to the Company's LTM Adjusted EBITDA ended March 31, 2018; (ii) a range of 6.0x to 7.0x to the Company's estimated CY 2018E Adjusted EBITDA; (iii) a range of 6.0x to 7.0x to the Company's estimated CY 2019E Adjusted EBITDA; and (iv) a range of 5.5x to 6.5x to the Company's estimated CY 2020E Adjusted EBITDA.

36. The Proxy Statement fails to disclose the basis for applying the following multiple ranges to Twin River in its analysis: (i) a range of 8.0x to 9.0x to Twin River's LTM Adjusted EBITDA ended March 31, 2018; (ii) a range of 7.5x to 8.5x to Twin River's estimated CY 2018E Adjusted EBITDA; (iii) a range of 7.0x to 8.0x to Twin River's estimated CY 2019E Adjusted EBITDA; and (iv) a range of 7.0x to 8.0x to Twin River's estimated CY 2020E Adjusted EBITDA.

37. The Proxy Statement fails to disclose how Houlihan Lokey reached the following equity contribution reference ranges for the Company: (i) 6.6% to 8.9% based on LTM Adjusted EBITDA ended March 31, 2018; (ii) 6.0% to 8.3% based on estimated CY 2018E Adjusted

EBITDA; (iii) 5.7% to 8.0% based on estimated CY 2019E Adjusted EBITDA; and (iv) 6.3% to 9.0% based on estimated CY 2020E Adjusted EBITDA.

38.     With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the basis for applying (i) a range of terminal value multiples of 6.5x to 7.5x and discount rates ranging from 10.0% to 11.0% for Dover Downs; and (ii) a range of terminal value multiples of 8.0x to 9.0x and discount rates ranging from 7.5% to 8.5% for Twin River.

**Material False and Misleading Statements or Material Misrepresentations
or Omissions Regarding Potential Conflicts of Interest of Houlihan Lokey**

39.     The Proxy Statement does not disclose material information concerning potential conflicts of interest facing Houlihan Lokey.  The Proxy Statement notes the following concerning previous services rendered by Houlihan Lokey:

> Houlihan Lokey and certain of its affiliates have in the past provided and are currently providing investment banking, financial advisory and/or other financial or consulting services to Standard General, L.P. ("SG"), Twin River's largest stockholder, or one or more security holders or affiliates of, and/or portfolio companies of investment funds affiliated or associated with, SG (collectively, with SG, the "SG Group"), for which Houlihan Lokey and its affiliates have received, and may receive, compensation, including, among other things, during the last two years having acted as financial advisor to ALST Casino Holdco LLC, then a member of the SG Group, in connection with its sale transaction, which closed in September 2016 for which Houlihan Lokey received compensation of approximately $6.8 million.

40.     The Proxy Statement, however, fails to disclose all the fees Houlihan Lokey has received in providing the above listed services.

41.     Additionally, the Proxy Statement fails to disclose whether or not Houlihan Lokey has provided services for Dover Downs in the past, and if so, whether it has received compensation in providing such services.

42. The omission of the above materials renders the Proxy Statement materially incomplete and misleading, as shareholders will be unable to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction without proper disclosures.

**Material and Misleading Statements or Material Misrepresentations
or Omissions Regarding the Background of the Proposed Transaction**

43. The Proxy Statement omits material information relating to the sales process leading up to the Proposed Transaction.

44. Specifically, the Proxy Statement fails to disclose why in August 2016, why executive officers of the Company sought to contact several parties concerning a potential transaction, and how they determined who to contact for a potential transaction. Moreover, they failed to disclose whether they were strategic or non-strategic suitors or if reasons were provided for any lack of interest in pursuit of the Company.

45. The Company was apparently in contact with at least nine (9) parties concerning a potential transaction. Ultimately, by August 2017, only one company, Party A, expressed interest in discussing a potential transaction. The Proxy Statement fails to disclose what sort of negotiations or conversations occurred with the nine (9) parties between August 2016 and August 2017.

46. The Proxy Statement fails to disclose whether any of the nine (9) parties entered into any "don't ask, don't waive" ("DADW") provisions with the Company. Although, the Proxy Statement notes that Dover Downs entered into a mutual non-disclosure agreement with Party A, it fails to disclose whether the executed agreement contained DADW provisions that are presently precluding Party A from making a topping bid for the Company. This information is material to shareholders in deciding how to vote on the proposed Transaction, as it would show whether or not a superior offer for the Company was available.

47. Lastly, the Proxy Statement notes that during discussions with Twin River's financial advisors, the parties discussed various hypothetical equity values of the Company and Twin River, but fails to disclose the basis for each hypothetical equity value.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

50. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

51. The Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

52. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

53. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

54. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

55. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the

preparation of the Company's financial projections.

56. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

57. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

58. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of Dover Downs within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Dover Downs, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

62. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

65. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate an Amendment to its Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 10, 2018                    Respectfully submitted,

By: _____
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

## **SWORN CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

I, Tammy Raul, hereby certify that:

1. Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Dover Downs securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5. I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 12/10/2018

*[Signature: Tammy Raul]*

    Signature

## Exhibit A

My transactions in Dover Downs Gaming & Entertainment, Inc. (DDE) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| DDE | 12/6/2013 |  | P | 200 | $1.50 |